IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



WENDELL WAGGENER,

    Plaintiff,

v.                            Civil Action No. 3:09cv281

NORTHERN NECK SURGICAL
SERVICES, INC., and
STEVEN J. OLTERMANN, M.D.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the court on the MOTION FOR COSTS (Docket No. 56) filed by Plaintiff Wendell Waggener. For the reasons that follow, the motion will be granted.

### BACKGROUND

On January 8, 2010, a jury returned a verdict in favor of Wendell Waggener against the Defendants, Dr. Steven J. Oltermann and his employer, Northern Neck Surgical Services. In his Complaint, Waggener alleged that Dr. Oltermann breached the standard of care by initially failing to diagnose a colonic obstruction, and then failing to perform emergency surgery immediately after discovering the obstruction. The complaint further alleged that these breaches led to a rupture of Waggener's colon and various

1

subsequent injuries that produced extensive medical bills, as well as "great pain of body and mind" that will continue into the future. The jury returned a verdict in favor of Waggener in the amount of $2 million. On a motion to which the parties consented, the Court, by Order entered on January 13, 2010 (Docket No. 55), reduced the verdict to $1.8 million, to conform the verdict to Virginia Code § 8.01-581.15, which places a cap on damages that may be awarded to a medical malpractice plaintiff.[1]

Following entry of judgment, Waggener filed a Bill of Costs. As the prevailing party in the action, Waggener sought to have these costs, in the amount of $2,706.88, taxed to the Defendants pursuant to Fed. R. Civ. P. 54(d). The Defendants opposed Waggener's motion on the basis that Virginia Code § 8.01-581.15 limits total recovery in medical malpractice actions to the maximum recovery limit stated in the statute. Because § 8.01-581.15 is a matter of substantive law that supplies the rule of decision in this case, argue the Defendants, the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), mandates that

---

[1] The specific amount of maximum damages depends upon the year in which the act of alleged malpractice was committed, ranging from $1.5 million for acts occurring between August 1, 1999 and July 1, 2000 to $2 million for acts occurring after July 1, 2008. In this action, because the act of malpractice occurred in June 2006, the statutory cap is $1.8 million.

a district court sitting in diversity apply the state substantive law codified in § 8.01-581.15.

## DISCUSSION

Fed. R. Civ. P. 54(d) states, in pertinent part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Thus, an award of costs to the prevailing litigant is the norm in federal court,[2] and a decision not to award costs is the exception, save for special circumstances in which the United States Code, the Federal Rules of Civil Procedure, or a court order provide otherwise. The text of the rule is clear. Rule 54(d) does not contemplate a scenario in which a state statute would require a federal court, sitting in diversity, to apply state law that prohibits an award of costs.

The Defendants nonetheless contend that Virginia Code § 8.01-581.15 forecloses application of Rule 54(d) to award costs to Waggener. The statute provides, in pertinent part, that: "In any verdict returned against a health care provider in an action for malpractice . . . the total

---

[2] It is also the norm in courts of the Commonwealth of Virginia. See Va. Code § 17.1-601 ("Except when it is otherwise provided, the party for whom final judgment is given in an action or motion shall recover his costs against the opposite party."). Neither this statute, nor any case construing it, has found the statutory cap on medical malpractice verdicts to limit the recovery of costs under § 17.1-601.

3

amount recoverable for any injury to, or death of, a patient shall not exceed [the statutorily defined amount]." Because the verdict for Waggener reaches the cap of $1.8 million, the Defendants argue, an imposition of costs above that amount pursuant to Rule 54(d) would violate § 8.01-581.15. Thus, the issue is whether the statutory cap on damages that may be awarded in a malpractice verdict operates to foreclose, as a matter of substantive law, a federal court from taxing costs, pursuant to Rule 54(d), when to do so would mean entry of a judgment for more than the statutory cap.

The short answer is that, as is generally settled, an award of costs to the prevailing party is a matter of procedure, and not substance, and is thus controlled by Fed. R. Civ. P. 54(d), not by the Virginia statute. See Carter v. General Motors Corp., 983 F.2d 40, 44 (5th Cir. 1993) ("State law cannot limit the discretionary power vested in the district courts by Rule 54(d).") (quoting Moore's Federal Practice);[3] Glassman Constr. Co. v. Md. City

---

[3] Carter's citation to Moore's Federal Practice is outdated; the current section of Moore's pertaining to 54(d) cost assessment, which states a similar but not identical rule, is 10 Moore's Federal Practice § 54.103[2] (Matthew Bender 3d ed.), which states that "[t]he issue of what costs may be awarded incident to the judgment is a procedural issue under Erie and its progeny, so federal law governs the award of costs in diversity actions, irrespective of contrary state costs provisions." Moore's also recognizes that, "[c]onsistent with the policy rationale of Erie doctrine, however, if a state statute is not inconsistent with federal law and the failure to apply the state

4

Plaza, Inc., 371 F. Supp. 1154, 1162 (D. Md. 1974) ("In diversity actions the principles as to the allowance of costs deal with procedural matters and state law in and of itself is not controlling."); Barneby v. E.F. Hutton & Co., 130 F.R.D. 679, 683-84 (M.D. Fla. 1990) ("[I]n an action brought in federal court, the award of costs is a matter of federal procedure and, therefore, the provisions of Rule 54(d) [] govern the procedure for awarding costs rather than state law."); Mawulawde v. Bd. of Regents, 2009 U.S. Dist. LEXIS 104068, at *16 (S.D. Ga. Nov. 9, 2009) ("Federal, not state, law governs the inquiry [of whether costs are taxable]."); Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc., 2009 U.S. Dist. LEXIS 40505, at *5-6 (N.D. Cal. Apr. 29, 2009) ("As an initial matter, the court notes that Federal Rule of Civil Procedure 54(d) governs an award of costs in federal district court, *even in cases in which state law supplies the law of the decision.*") (emphasis added).

In De Ramirez v. Grecomar Shipping Agency, 82 F.R.D. 327, 330 (D.P.R. 1976), the court addressed the issue as one of policy, observing that

> under the Erie doctrine, the matter [of whether costs should be taxed according to state law or

---

statute might lead to forum-shopping, the state provision should be applied in a diversity action." Id. (citing S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist., 60 F.3d 305, 309-312 (7th Cir. 1995)).

5

Fed. R. Civ. P. 54(d)] sounds as procedural and as such the Federal statutory law would apply. . . . Focusing on the underlying rationale for *Erie* and its progeny we are convinced that the goals of discouragement of forum shopping and the avoidance of inequitable administration [of] the laws are best achieved by observing the mandatory Federal statutory provisions [as to the taxing of litigation costs].

In Stacy v. Williams, 50 F.R.D. 52, 54 (N.D. Miss. 1970), the defendants invoked a Mississippi statute prohibiting the taxation of costs against the state. The court rejected applicability of the state law because "in federal court litigation, a state law may not limit the federal court's discretion to tax costs under Rule 54(d)." Id. (citations omitted). Thus, the clearly articulated state policy did not restrict the federal court's procedural prerogative to tax costs to the prevailing party.

No matter how the issue has been presented, federal courts uniformly have held that the taxation of costs is a matter of federal procedure, not state substantive law. The decisions cited by the Defendants do not hold otherwise.

The Defendants rely principally on Boyd v. Bulala, 905 F.2d 764, 767 (4th Cir. 1990) for the proposition that § 8.01-581.15 limits total recovery to the amount defined in the statute. Boyd made clear that the statute "covers

6

both compensatory and punitive damage claims of the patient and any claims by others that, by substantive law, are 'derivative' of the patient's claims." Thus, Boyd recognized that the statute capped total *damages*, and held that a plaintiff may not seek to circumvent the cap through alternative substantive claims.[4] Neither Boyd nor any of the Defendants' other cases address the administrative matter of taxation of costs. Moreover, neither does § 8.01-581.15, which, by its terms, caps only the amount of the "verdict."

## CONCLUSION

For the foregoing reasons, the Plaintiffs' MOTION FOR COSTS (Docket No. 56) will be granted.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February __, 2010

---

[4] In all of the cases that the Defendant cites to support its argument that the cap is too rigid to allow for the taxation of costs in federal court, the plaintiff(s) had sought recovery on multiple claims, or against multiple defendants, for a single injury, such that the sum of the multiple verdicts would exceed the amount of the cap. See, e.g., Boyd, 905 F.2d at 766 (identifying multiple plaintiffs who brought multiple claims related to a single injury in a birthing room); Power v. Alexandria Physicians Group, 887 F. Supp. 845, 846 (E.D. Va. 1995) (discussing "whether the medical malpractice cap bars recovery for malpractice injuries for which the plaintiff has already recovered the cap limit in an EMTALA suit against the hospital").

7